IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY CATHERINE MOORE,)
)
        Plaintiff,)
  -vs-)  Civil Action No.  16-502
)
NANCY A. BERRYHILL,[1])
COMMISSIONER OF SOCIAL SECURITY,)
)
        Defendant.)

AMBROSE, Senior District Judge

## OPINION

Pending before the Court are Cross-Motions for Summary Judgment. (ECF Nos. 6 and 10). Both parties have filed Briefs in Support of their Motions. (ECF Nos. 7 and 11). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Plaintiff's Motion for Summary Judgment (ECF No. 6) and denying Defendant's Motion for Summary Judgment. (ECF No. 10).

**I. BACKGROUND**

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). Plaintiff filed her applications alleging she had been disabled since June 15, 2009. (ECF No. 4-6, p. 2. Administrative Law Judge ("ALJ"), Guy Koster, held a hearing on March 6, 2014. (ECF No. 4-2, pp. 38-74). On May 2, 2014, the ALJ found that Plaintiff was not disabled under the Act. (ECF No. 4-2, pp. 20-33).

After exhausting all administrative remedies, Plaintiff filed the instant action with this court. The parties have filed Cross-Motions for Summary Judgment. (ECF Nos. 6 and 10). The issues are now ripe for review.

---

1 Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the

impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### B. Weighing of Opinion Evidence

Plaintiff asserts that the ALJ erred in weighing the medical opinion evidence. (ECF No. 7, pp. 14-17). In this regard, Plaintiff first argues that the ALJ erred in giving less weight to the opinion of the consulting examiner, Dr. Olfman. *Id.* The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and

3

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r of Social Sec. Admin.*, No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

In this case, the ALJ gave Dr. Olfman's opinion "less weight," *inter alia,* because there are "several inconsistencies" between her narrative statement in Dr. Olfman's report and the Mercy Behavioral Health accounts of the traumatic events. (ECF No. 4-2, p. 31). Plaintiff argues that there are no apparent inconsistencies between Dr. Olfman's narrative and the Mercy Behavioral

4

Health records so that it is unclear "what inconsistencies the ALJ believed were present." (ECF No. 7, pp. 15-16). Therefore, Plaintiff submits that I am unable to conduct a meaningful review.

While the ALJ identifies that the inconsistencies lie between the narrative statement of Dr. Olfman and the accounts of the traumatic events in the Mercy Behavioral Health records, the ALJ cites to Exhibits 1F, 2F and 8F for support without any pinpoint references. (ECF No. 4-2, p. 31). These exhibits contain more than 200 pages of information. (ECF No. 4-9, pp. 2-85; 4-10, pp. 2-85; and 4-12, pp. 2-36). Without more, I agree with Plaintiff that this comparison is vague and ambiguous and I find I am uncertain as to the inconsistency the ALJ is referring. Therefore, I am unable to conduct a proper and meaningful review.

Additionally, I agree with Plaintiff that there are apparent mischaracterizations of the evidence by the ALJ. (ECF No. 7, pp. 17-20). For example, the ALJ calls Plaintiff's credibility into question when he suggests that there are no "clinical exams" evidencing her skin picking and hair pulling. (ECF No. 4-2, p. 30). I am unsure what "clinical exams" the ALJ is expecting to evidence this type of information other than the medical records, which reference the same.

Furthermore, the ALJ states that Plaintiff told Dr. Olfman that "she was fired from her employment in 2007 due to alcohol abuse." (ECF No. 4-2, p. 30). After a review of the record, I find this is an incorrect statement. To be clear, Dr. Olfman's report states that Plaintiff, "who was overwrought by the death of her daughter and the loss of her older daughter began drinking heavily, lost her job and became homeless for a brief period of time." (ECF No. 4-12, p. 45). This record simply does not support that Plaintiff lost her job due to alcohol abuse as the ALJ suggests.

I also find the ALJ misrepresents the GAF[2] scores. The ALJ rejects all of the relevant and current GAF scores ranging in the 40s and 50s for a GAF score of 65-70. (ECF No. 4-2. P. 31). This is a conclusion not based in the record. The record referencing the 65-70 GAF score was only referenced by a treating doctor, Dr. Mukherjee. (ECF No. 4-12, p. 65). It was not a GAF score given by Dr. Mukherjee. *Id.* Furthermore, there is no date or reference associated with the 65-70 GAF score, so there is no indication that that GAF score is even relevant to the applicable time period at issue. In fact, the GAF score given by Dr. Mukherjee on that date was 45. *Id.* Moreover, the ALJ never gives a reason for accepting the 65-70 over the multiple lower scores. *See,* ECF No. 4-2, pp. 27-31. Thus, I find that the ALJ's assessment of the GAF scores is not supported by the record.

Consequently, based on all of the above, I find that remand is warranted. An appropriate order shall follow.

---

[2] GAF is an acronym which refers to an individual's score on the Global Assessment of Functioning Scale. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). The scale is used to report the "clinician's judgment of the individual's overall level of functioning" in light of his psychological, social, and occupational limitations. *Id.* The GAF ratings range from 1 to 100. GAF scores are arrived at by a clinician based on his or her assessment of a patient's self-reporting. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). GAF scores do not have a direct correlation to the disability requirements and standards of the Act. *See*, 65 Fed. Reg. 50746, at 50764-65 (2000). In fact, as of May 18, 2013, the American Psychiatric Association no longer endorses the GAF scale as a measurement tool. *See,* Diagnostic and Statistical Manual of Mental Disorders (DMS-V) (5th ed. 2013). Nonetheless, GAF scores are still medical evidence that informs a Commissioner's judgment in assessing whether an individual is disabled and must be considered as such.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY CATHERINE MOORE, )
                                        )
                Plaintiff, )
  -vs- )          Civil Action No.  16-502
                                        )
NANCY A. BERRYHILL,[3] )
COMMISSIONER OF SOCIAL SECURITY, )
                                        )
                Defendant. )

AMBROSE, Senior District Judge

## **ORDER OF COURT**

THEREFORE, this 8th day of May, 2017, it is ordered that Plaintiff's Motion for Summary Judgment (ECF No. 6) is granted and Defendant's Motion for Summary Judgment (ECF No. 10) is denied.

It is further ordered that the decision of the Commissioner of Social Security is hereby vacated and the case is remanded for further administrative proceedings consistent with the foregoing opinion.

                                                    BY THE COURT:

                                                    s/   Donetta W. Ambrose
                                                     Donetta W. Ambrose
                                                     United States Senior District Judge

---

[3] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.